# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,  )

    Plaintiff,  )

      v.  )

ALL METALS PROCESSING  )
COMPANY; ESTATE OF HELEN  )
L. POWERS; BARBARA C.  )
HARKER, personal representative  )
of the ESTATE OF HELEN L.  )
POWERS  )

    and  )

264 W. SPAZIER AVENUE,  )
a parcel containing 9,919 square  )
feet of land located in Burbank,  )
Los Angeles County, California  )

    Defendants.  )

_____  )

CIVIL ACTION NO: 09-06363 JFW
JUDGE: JOHN F. WALTER

JS=6

## CONSENT DECREE

# CERCLA CONSENT DECREE FOR RECOVERY OF PAST COSTS AT 264 W. SPAZIER AVENUE, BURBANK, CALIFORNIA

## TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | BACKGROUND | 1 |
| II. | JURISDICTION | 2 |
| III. | PARTIES BOUND | 2 |
| IV. | DEFINITIONS | 3 |
| V. | PAYMENT OF RESPONSE COSTS | 5 |
| VI. | TERMINATION OF THE ESTATE OF HELEN L. POWERS | 9 |
| VII. | FAILURE TO COMPLY WITH CONSENT DECREE | 9 |
| VIII. | RELEASE OF FEDERAL LIEN | 11 |
| IX. | COVENANT NOT TO SUE BY PLAINTIFF | 12 |
| X. | RESERVATION OF RIGHTS BY UNITED STATES | 12 |
| XI. | COVENANT NOT TO SUE BY SETTLING DEFENDANTS | 13 |
| XII. | EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION | 14 |
| XIII. | ACCESS AND INSTITUTIONAL CONTROLS | 16 |
| XIV. | CERTIFICATION | 17 |
| XV. | NOTICES AND SUBMISSIONS | 18 |
| XVI. | RETENTION OF JURISDICTION | 19 |
| XVII. | INTEGRATION/APPENDICES | 19 |
| XVIII. | LODGING AND OPPORTUNITY FOR PUBLIC COMMENT | 20 |
| XIX. | SIGNATORIES/SERVICE | 20 |
| XX. | FINAL JUDGMENT | 21 |

# CONSENT DECREE

## I. BACKGROUND

A. On September 1, 2009, the United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), filed a complaint in this matter pursuant to Section 107(a) and 107(*l*) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. § 9607, as amended ("CERCLA"), seeking reimbursement of response costs incurred for response actions taken in connection with the release or threatened release of hazardous substances at 264 W. Spazier Avenue in Burbank, Los Angeles County, California.

B. The Defendants, Estate of Helen L. Powers and Barbara C. Harker, personal representative of the Estate of Helen L. Powers, who have entered into this Consent Decree (hereinafter "Settling Defendants") do not admit any liability to Plaintiff arising out of the transactions or occurrences alleged in the complaint.

C. In June 2007, EPA responded to the release or threatened release of hazardous substances at 264 W. Spazier Avenue, Burbank, California. In addition, on November 20, 2007, Settling Defendants received a CERCLA General Notice Letter from EPA that the Site is also part of the San Fernando Valley Area 2 Superfund Site, Glendale Chromium Operable Unit. Between June and December 2007, EPA conducted a removal action at the site to address contamination in the building on the property and hazardous substances that had contaminated the soil beneath and adjacent to the building. EPA's past and future response costs at the property exceed $2.2 million.

D. In approximately 1978, Helen L. Powers acquired ownership of 264 W. Spazier Avenue, Burbank, California. In April 2006, Helen L. Powers died. In November 2006, Defendant Barbara C. Harker was appointed personal representative of the Estate of Helen L. Powers. On May 28, 2009, Barbara C. Harker filed a petition to abandon the insolvent estate of Helen L. Powers in

1

Orange County, California Superior Court (Case No. A239599). On September 1, 2009, the United States objected to the petition to dissolve the Estate.

E. The United States has reviewed the Financial Information submitted by Settling Defendants to determine whether the Estate is financially able to pay response costs incurred and to be incurred at the Site. Based upon this Financial Information, the United States has determined that the Estate is able to pay the amounts specified in Section V.

F. The United States and Settling Defendants agree, and this Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, that settlement of this matter will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

THEREFORE, with the consent of the Parties to this Decree, it is ORDERED, ADJUDGED, AND DECREED:

## II. **JURISDICTION**

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. §§ 9606, 9607, and 9613(b) and also has personal jurisdiction over Settling Defendants. Settling Defendants consent to and shall not challenge entry of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III. **PARTIES BOUND**

2. This Consent Decree is binding upon the United States and upon Settling Defendants and their heirs, successors, and assigns. Any change in ownership or corporate or other legal status, including, but not limited to, any transfer of assets or real or personal property, shall in no way alter the status or responsibilities of Settling Defendants under this Consent Decree.

2

## IV.  **DEFINITIONS**

3.  Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations.  Whenever terms listed below are used in this Consent Decree or in any appendix attached hereto, the following definitions shall apply:

a.  "CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. § 9601, *et seq.*

b.  "Consent Decree" shall mean this Consent Decree and all appendices attached hereto.  In the event of conflict between this Consent Decree and any appendix, this Consent Decree shall control.

c.  "Day" shall mean a calendar day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

d.  "DOJ" shall mean the United States Department of Justice and any successor departments, agencies, or instrumentalities of the United States.

e.  "EPA" shall mean the United States Environmental Protection Agency and any successor departments, agencies or instrumentalities of the United States.

f.  "Estate" shall mean the Estate of Helen L. Powers.

g.  "Fair Market Value" shall mean the price at which the Property would change hands between a willing buyer and a willing seller under actual market conditions, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts.

h.  "Financial Information" shall mean those financial documents identified in Appendix B.

3

i. "Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

j. "Net Sales Proceeds" shall mean the total value of all consideration received by Settling Defendants for each Transfer less: i) attorney's fees of no more than $10,000 to be paid to Settling Defendants' attorney, ii) closing costs, marketing costs, and broker fees limited to those reasonably incurred and actually paid by Settling Defendants associated with the Transfer of the Property, and iii) federal, state, and local taxes owed on the proceeds. Settling Defendants shall provide EPA with documentation sufficient to show the total value of all consideration received by Settling Defendants for each Transfer at the time of each Transfer, the amount of the proceeds of the Transfer, and the amounts corresponding to items i) through iii) above. The documentation shall also include, either as part of the report or separately, 1) a tax statement showing the assessed valuation of the Property for each of the three years immediately preceding the Transfer, and 2) a schedule showing all outstanding indebtedness on the Property.

k. "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

l. "Parties" shall mean the United States and the Settling Defendants.

m. "Plaintiff" shall mean the United States.

n. "Property" shall mean that portion of the Site that is currently owned by the Estate. The Property is located at 264 W. Spazier Avenue, Burbank, Los Angeles County, California, and is designated by the following

4

property description: "a parcel containing 9,919 square feet of land located in Burbank, Los Angeles County, California."

   o.  "Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

   p.  "Settling Defendants" shall mean the Estate of Helen L. Powers and Barbara C. Harker in her capacity as personal representative of the Estate.

   q.  "Site" shall mean the Superfund site, encompassing approximately 9,919 square feet located at 264 W. Spazier Avenue, Burbank, Los Angeles County, California.

   r.  "United States" shall mean the United States of America, including its departments, agencies, and instrumentalities.

## V. <u>PAYMENT OF RESPONSE COSTS</u>

   4.  Within thirty (30) days of entry of this Consent Decree, Settling Defendants agree to act in good faith and to cooperate with EPA in the recovery of, and shall pay to the EPA Hazardous Substance Superfund, any and all proceeds recovered from an insurance policy covering the Site, or to which the Estate, Helen L. Powers, or the Helen L. Powers Trust is or has been an insured, issued by Maryland Casualty Company.  Settling Defendants agree to act in good faith and cooperate with EPA in the recovery of insurance proceeds from any additional insurance policies covering the Site, or to which the Estate, Helen L. Powers, or the Helen L. Powers Trust is or has been an insured and shall pay to the EPA Hazardous Substance Superfund, any and all proceeds from these additional insurance policies.  Any additional recovery of insurance proceeds by the Settling Defendants shall be paid to the EPA Hazardous Substance Superfund within thirty (30) days of receipt of the proceeds by the Settling Defendants. Payments under this Paragraph shall be made in accordance with the payment instructions in Paragraph 11(d).

5. Settling Defendants shall also cause payment to be made to the EPA Hazardous Substance Superfund from proceeds of the sale of the Property, as provided herein.

6. Settling Defendants hereby assign and pledge to EPA eighty-five percent (85%) of the Net Sales Proceeds.

7. Within thirty (30) days after the Effective Date of this Agreement, Settling Defendants shall enter into a real estate listing agreement ("Listing Agreement") listing the Property for sale with an established, reputable, and licensed commercial real estate brokerage ("Listing Agent") that is experienced in commercial real estate transactions in Los Angeles County, California.

8. The Listing Agreement shall provide that the Settling Defendants may terminate the Listing Agreement with seven (7) days notice if EPA provides Settling Defendants notice that EPA has determined, in its sole, unreviewable discretion that the Listing Agent has failed to comply with any term of the Listing Agreement. Settling Defendants shall terminate the Listing Agreement within seven (7) days of receiving such notice from EPA. In the event that Settling Defendants' agreement with a Listing Agent is terminated prior to the sale of the Property and prior to the twelve (12) month period specified in Paragraph 13, Settling Defendants shall, within fourteen (14) days from the date of termination, enter into an agreement with a different Listing Agent, that also meets the qualifications set forth in the preceding paragraph.

9. Settling Defendants agree to use their best efforts accomplish the sale of the Property, taking all actions reasonably necessary to facilitate and expedite the sale of the Property in a commercially reasonable manner including, but not limited to, advertising the Property for sale on at least a monthly basis. Settling Defendants agree to take no action which would impair the value of the Property.

10. Settling Defendants agree to require the Listing Agent, through the Listing Agreement, to notify EPA in writing within forty-eight (48) hours of

receipt of any written offer to purchase the Property or a portion thereof and, at that time, to provide EPA with a copy of the offer. If EPA, in its sole, unreviewable discretion, approves of the offer in writing, then Settling Defendants shall accept the offer and enter into a purchase agreement. If a written offer includes a sales price for any portion of the Property at least 90% of the value indicated in the Appraisal (Appendix A), and the offer does not include any terms that are inconsistent with the terms or purpose of this Agreement, CERCLA, or other applicable federal or state law or which are otherwise unreasonable, EPA approval of the purchase agreement may be presumed and Settling Defendants may accept the offer and enter into a purchase agreement. Otherwise, Settling Defendants shall not execute a purchase agreement for the sale of any of the Property without prior written approval of the offer by EPA.

11. Within thirty (30) days after execution of an approved purchase agreement, the Settling Defendants shall cause to be prepared and submitted to EPA for approval appropriate escrow instructions as described below.

a. The escrow instructions shall provide for the proration of all closing costs and fees between purchaser and seller in a manner consistent with the custom in Los Angeles County, California for such transactions.

b. The escrow instructions shall provide that all normal expenses allocable to a seller at a closing of an escrow shall be deducted from the gross proceeds of the sale deemed otherwise receivable by the escrow agent. "Normal expenses" include commercially reasonable realtors' fees, reasonable costs of marketing, and any commercially reasonable costs of a public auction as well as survey costs, if required by a title company.

c. The escrow instructions shall provide that the escrow agent will allocate and distribute the Net Sales Proceeds within seven (7) days after the closing date of the sale: 85% to EPA and 15% to the Settling Defendants.

7

d. The escrow instructions shall provide that EPA's share will be paid by FedWire Electronic Funds Transfer ("EFT"). Payment shall be made by EFT in accordance with current EFT procedures to be provided to Settling Defendants by the Financial Litigation Unit of the U.S. Attorney's Office and shall be accompanied by a statement identifying the name and address of Settling Defendants, the Site name, EPA Region IX, and Site/Spill ID # 09 QP, and the civil action number for this case.

e. At the time of payment, Settling Defendants shall send notice that payment has been made to EPA and DOJ in accordance with Section XV (Notices and Submissions).

f. The amounts to be paid pursuant to this Section shall be deposited in the Glendale Chromium Operable Unit Special Account of the EPA Hazardous Substance Superfund to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

12. After the proposed escrow instructions are approved by EPA and agreed to by the Settling Defendants and a purchaser, Settling Defendants shall open an escrow account with an escrow agent approved by EPA, and Settling Defendants shall execute the sale according to the approved terms. The escrow account agreement shall include the escrow instructions approved by EPA.

13. If the entire Property has not been sold within twelve (12) months after the Effective Date of this Agreement, Settling Defendants shall immediately make all necessary arrangements to have all unsold portions of the Property sold by public auction, which shall be conducted within fourteen (14) months of the Effective Date of this Agreement by a disinterested party with no connection with Settling Defendants and who is licensed in the State of California to conduct such a public auction. There shall be no minimum bid required for each parcel of property sold by public auction. The Settling Defendants shall ensure that the

8

proceeds from such an auction are handled according to escrow instructions consistent with those above and approved by EPA.

14. EPA shall provide the Listing Agent with a letter describing what steps a purchaser must take to satisfy the reasonable steps requirement for a "bona fide prospective purchaser" under CERCLA § 101(40). Any such letter will be consistent with policy and guidance issued by EPA, including the "Policy on the Issuance of Comfort/Status Letters," 62 Fed. Reg. 2,624 (1997) and the "Interim Guidance Regarding Criteria Landowners Must Meet In Order to Qualify for Bona Fid Prospective Purchaser, Contiguous Property Owner, or Innocent Landowner Limitations on CERCLA Liability," (March 2003). Any such letter will include limitations recommended by the applicable policies and guidance.

## VI. <u>TERMINATION OF THE ESTATE OF HELEN L. POWERS</u>

15. Settling Defendants agree that, within 10 (ten) days of the lodging of this Consent Decree, they will withdraw their Petition to Dissolve the Estate of Helen L. Powers currently pending in Orange County Superior Court. Settling Defendants further agree that they will not seek to terminate or dissolve the Estate of Helen L. Powers until the Property is sold and the the payments are made pursuant to Section V (Payment of Response Costs). Barbara C. Harker, the personal representative of the Estate, will not seek to terminate her responsibilities as personal representative of the Estate until after the Estate has fulfilled its responsibilities under this Agreement.

16. Settling Defendants agree to provide at least thirty (30) days notice to the parties listed in Section XV (Notices and Submissions) before seeking to terminate or dissolve the Estate.

## VII. <u>FAILURE TO COMPLY WITH CONSENT DECREE</u>

17. <u>Interest on Late Payments</u>. If Settling Defendants fail to make any payment of amounts recovered under Section V by the required due date, Interest shall continue to accrue on the unpaid balance through the date of payment.

9

18. <u>Stipulated Penalty</u>.

a. If any amount of amounts recovered under Section V is not paid by the required date, Settling Defendants shall be in violation of this Consent Decree and shall pay, as a stipulated penalty, in addition to the Interest required by Paragraph 17, $250 per violation per day that such payment is late.

b. Stipulated penalties are due and payable within thirty (30) days of the date of the demand for payment of the penalties by EPA. All payments to EPA under this Paragraph shall be identified as "stipulated penalties" and shall be made by certified or cashier's check made payable to "EPA Hazardous Substance Superfund." The check, or a letter accompanying the check, shall reference the name and address of the party making payment, the Site name, EPA Region IX and Site Spill ID Number QP-09, DOJ Case Number 90-1-3-09578, and the civil action number for this case, and shall be sent to:

United States Environmental Protection Agency
Superfund Payments
Finance Center
PO Box 979076
St. Louis, MO 63197-9000

c. At the time of each payment, Settling Defendants shall send notice that payment has been made to EPA and DOJ in accordance with Section XV (Notices and Submissions).

d. Penalties shall accrue as provided in this Paragraph regardless of whether EPA has notified Settling Defendants of the violation or made a demand for payment, but need only be paid upon demand. All penalties shall begin to accrue on the day after payment or performance is due and shall continue to accrue through the date of payment. Nothing herein shall prevent the

10

simultaneous accrual of separate penalties for separate violations of this Consent Decree.

19. If the United States brings an action to enforce this Consent Decree, Settling Defendants shall reimburse the United States for all costs of such action, including but not limited to costs of attorney time.

20. Payments made under this Section shall be in addition to any other remedies or sanctions available to Plaintiff by virtue of Settling Defendants' failure to comply with the requirements of this Consent Decree.

21. Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive payment of any portion of the stipulated penalties that have accrued pursuant to this Consent Decree. Payment of stipulated penalties shall not excuse Settling Defendants from payment as required by Section V or from performance of any other requirements of this Consent Decree.

## VIII.  **RELEASE OF FEDERAL LIEN**

22. With respect to the sale of the Property or any parcel that is part of the Property, Settling Defendants may request from EPA, and EPA will tender to the escrow agent, a Draft Notice of Release of Federal Lien releasing, with respect to the Property or parcel, as applicable, the lien filed by EPA in the Recorder's Office of Los Angeles County, State of California on September 26, 2007. The Notice of Release of Federal Lien shall release the Federal Lien with respect to the Property or parcel, as applicable, and shall not release any other lien or encumbrance which may exist upon the Property. The United States shall record the Notice of Release of Federal Lien with Los Angeles County upon receipt of notice from the escrow agent that the escrow agent has received the full amount of the consideration of the sale of the Property.

11

## IX.  COVENANT NOT TO SUE BY PLAINTIFF

23.  Except as specifically provided in Section X (Reservation of Rights by United States), the United States covenants not to sue ~~or to take administrative~~ action against Settling Defendants pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), with regard to the Site.  With respect to present and future liability, this covenant shall take effect upon receipt by EPA of all amounts required by Section V (Payment of Response Costs) and any amount due under Section VII (Failure to Comply with Consent Decree).  This covenant not to sue is conditioned upon the satisfactory performance by Settling Defendants of their obligations under this Consent Decree.  This covenant not to sue is also conditioned upon the veracity and completeness of the Financial Information provided to EPA by Settling Defendants.  If the Financial Information is subsequently determined by EPA to be false or, in any material respect, inaccurate, Settling Defendants shall forfeit all payments made pursuant to this Consent Decree and this covenant not to sue and the contribution protection in Paragraph 30 shall be null and void.  Such forfeiture shall not constitute liquidated damages and shall not in any way foreclose the United States' right to pursue any other causes of action arising from Settling Defendants' false or materially inaccurate information.  This covenant not to sue extends only to Settling Defendants and does not extend to any other person or corporation.

## X.  RESERVATION OF RIGHTS BY UNITED STATES

24.  The United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendants with respect to all matters not expressly included within the Covenant Not to Sue by United States in Paragraph 23.  Notwithstanding any other provision of this Consent Decree, the United States reserves all rights against Settling Defendants with respect to:

a.  liability for failure of Settling Defendants to meet a requirement of this Consent Decree;

12

b. criminal liability;

c. liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

d. liability, based upon Settling Defendants' transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal, of a hazardous substance or a solid waste at or in connection with the Site, after signature of this Consent Decree by Settling Defendants; and

e. liability arising from the past, present, or future disposal, release or threat of release of a hazardous substance, pollutant, or contaminant from outside of the Site.

25. Notwithstanding any other provision of this Consent Decree, EPA reserves, and this Consent Decree is without prejudice to, the right to re-institute or re-open this action, or to commence a new action seeking relief other than as provided in this Consent Decree, if the Financial Information provided by Settling Defendants, or the financial certification made by Settling Defendant in Paragraph 36, is false or, in an material respect, inaccurate.

## XI. COVENANT NOT TO SUE BY SETTLING DEFENDANTS

26. Settling Defendants covenant not to sue and agree not to assert any claims or causes of action against the United States, or its contractors or employees, with respect to the Site or this Consent Decree, including but not limited to:

a. any direct or indirect claim for reimbursement from the Hazardous Substance Superfund based on Sections 106(b)(2), 107, 111, 112, or 113 of CERCLA, 42 U.S.C. §§ 9606(b)(2), 9607, 9611, 9612, or 9613, or any other provision of law;

b. any claim arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the California

13

Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law; or

  c. any claim against the United States pursuant to Sections 107 and 113 of CERCLA, 42 U.S.C. §§ 9607 and 9613, relating to the Site.

 These covenants not to sue shall not apply in the event the United States brings a cause of action or issues an order pursuant to the reservations set forth in Paragraph 24 (a)-(e), but only to the extent that Settling Defendants' claims arise from the same response action or response costs that the United States is seeking pursuant to the applicable reservation.

 27. Nothing in this Consent Decree shall be deemed to constitute approval or preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

 28. Settling Defendants agree not to assert any CERCLA claims or causes of action that it may have for all matters relating to the Site, including for contribution, against any other person. This waiver shall not apply with respect to any defense, claim, or cause of action that Settling Defendants may have against any person if such person asserts a claim or cause of action relating to the Site against Settling Defendants.

## XII. **EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION**

 29. Except as provided in Paragraph 28, nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree. The preceding sentence shall not be construed to waive or nullify any rights that any person not a signatory to this Decree may have under applicable law. Except as provided in Paragraph 28, the Parties expressly reserve any and all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action which they may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto.

14

30. The Parties agree, and by entering this Consent Decree this Court finds, that Settling Defendants are entitled, as of the date of entry of this Consent Decree, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), for "matters addressed" in this Consent Decree. The "matters addressed" in this Consent Decree are all response actions taken or to be taken and all response costs incurred or to be incurred, at or in connection with the Site, by the United States or any other person. The "matters addressed" in this Consent Decree do not include those response costs or response actions as to which the United States has reserved its rights under this Consent Decree (except for claims for failure to comply with this Decree), in the event that the United States asserts rights against Settling Defendants coming within the scope of such reservations.

31. Settling Defendants agree that, with respect to any suit or claim for contribution brought by it for matters related to this Consent Decree, it will notify EPA and DOJ in writing no later than sixty (60) days prior to the initiation of such suit or claim. Settling Defendants also agree that, with respect to any suit or claim for contribution brought against it for matters related to this Consent Decree, it will notify EPA and DOJ in writing within ten (10) days of service of the complaint or claim upon it. In addition, Settling Defendants shall notify EPA and DOJ within ten (10) days of service or receipt of any Motion for Summary Judgment, and within ten (10) days of receipt of any order from a court setting a case for trial, for matters related to this Consent Decree.

32. In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, or other relief relating to the Site, Settling Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, *res judicata*, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent

15

proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the Covenant Not to Sue by Plaintiff set forth in Section IX.

## XIII. **ACCESS AND INSTITUTIONAL CONTROLS**

33. Settling Defendants shall:

a. commencing on the date of lodging of this Consent Decree, provide the United States and its representatives, including EPA and its contractors, with access at all reasonable times to the Site, or such other property, for the purpose of conducting any response activity related to the Site, including, but not limited to, the following activities:

1. Monitoring, investigation, removal, remedial or other activities at the Site;

2. Verifying any data or information submitted to the United;

3. Conducting investigations relating to contamination at or near the Site;

4. Obtaining samples;

5. Assessing the need for, planning, or implementing additional response actions at or near the Site;

6. Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendants or their agents;

7. Assessing Settling Defendants' compliance with this Consent Decree; and

8. Determining whether the Site or other property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted, by or pursuant to this Consent Decree.

b. Commencing on the date of lodging of this Consent Decree, refrain from using the Site, or such other property, in any manner that would

interfere with or adversely affect the implementation, integrity or protectiveness of the remedial measures to be performed at the Site;

c. Settling Defendants shall, within fifteen (15) Days after the entry of this Consent Decree, record a notice of the entry of this Consent Decree, with the Recorder's Office, Los Angeles County, State of California. Such notice shall provide that any person who subsequently acquires any interest in the Property or any portion thereof shall be subject to the provisions of Sections 101(40) and 107(r) of CERCLA, 42 U.S.C.§§ 9601(40) and 9607(r). Thereafter and continuing until EPA issues a notice of completion for the final remedy for the Site, each deed, title, or other instrument conveying an interest in the Property shall contain a notice stating that the Property is subject to this Consent Decree and shall reference the location of this Consent Decree. Within ten (10) Days of recording the notice, the Settling Defendants shall provide to EPA a conformed copy of the recorded notice.

34. If EPA determines that land/water use restrictions in the form of state or local laws, regulations, ordinances or other governmental controls are needed to implement response activities at the Site, ensure the integrity and protectiveness thereof, or ensure non-interference therewith, Settling Defendants shall cooperate with EPA's efforts to secure such governmental controls.

35. Notwithstanding any provision of this Consent Decree, the United States retains all of its access authorities and rights, as well as all of its rights to require land/water use restrictions, including enforcement authorities related thereto, under CERCLA, RCRA, and any other applicable statute or regulations.

## XIV. **CERTIFICATION**

36. Settling Defendants hereby certify that, to the best of their knowledge and belief, after thorough inquiry, they have:

a. not altered, mutilated, discarded, destroyed or otherwise disposed of any records, reports, or other information relating to Settling Defendants'

potential liability regarding the Site since notification of potential liability by the United States or the filing of suit against Settling Defendants regarding the Site, and that Settling Defendants have fully complied with any and all EPA requests for information regarding the Site and Settling Defendants' financial circumstances pursuant to Sections 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. § 6927; and

b.  submitted to EPA Financial Information that fairly, accurately, and materially sets forth the Estate's financial circumstances, and that those circumstances have not materially changed between the time the Financial Information was submitted to EPA and the time Settling Defendants execute this Consent Decree.

## XV.  NOTICES AND SUBMISSIONS

37.  Whenever, under the terms of this Consent Decree, notice is required to be given or a document is required to be sent by one party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing.  Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States, EPA, and Settling Defendants, respectively.

As to DOJ:

Chief, Environmental Enforcement Section

Environment and Natural Resources Division

U.S. Department of Justice (DJ # 90-11-3-09578)

P.O. Box 7611

Washington, D.C. 20044-7611

18

Matthew Thurlow

Environmental Enforcement Section

Environment and Natural Resource Division

U.S. Department of Justice

P.O. Box 7611

Washington, D.C. 20044-7611


As to EPA:

Larry Bradfish

Office of Regional Counsel

U.S. Environmental Protection Agency

75 Hawthorne Street

San Francisco, CA 94105


As to Settling Defendants:

Stewart R. Albertson

3750 Santa Fe Avenue, Suite 109

Riverside, California 92507


## XVI. RETENTION OF JURISDICTION

38. This Court shall retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Consent Decree.

## XVII. INTEGRATION/APPENDICES

39. This Consent Decree and its appendices constitute the final, complete, and exclusive Consent Decree and understanding between the Parties with respect to the settlement embodied in this Consent Decree. The Parties acknowledge that there are no representations, agreements, or understandings relating to the

19

settlement other than those expressly contained in this Consent Decree. The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is an Appraisal of the Property;

"Appendix B" is an Inventory and Appraisal filed by Settling Defendant on May 12, 2008 in Orange County Superior Court.

## XVIII. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

40. This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations which indicate that this Consent Decree is inappropriate, improper, or inadequate. Settling Defendants consent to the entry of this Consent Decree without further notice.

41. If for any reason this Court should decline to approve this Consent Decree in the form presented, this Consent Decree is voidable at the sole discretion of any party and the terms of the Consent Decree may not be used as evidence in any litigation between the Parties.

## XIX. SIGNATORIES/SERVICE

42. Each undersigned representative of Settling Defendants to this Consent Decree and the Deputy Chief for the Environmental Enforcement Section of the United States Department of Justice certifies that he or she is authorized to enter into the terms and conditions of this Consent Decree and to execute and bind legally such Party to this document.

43. Settling Defendants hereby agree not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree, unless the United States has notified Settling Defendants in writing that it no longer supports entry of the Consent Decree.

44. Settling Defendants shall identify, on the attached signature page, the name and address of an agent who is authorized to accept service of process by

mail on its behalf with respect to all matters arising under or relating to this Consent Decree. Settling Defendants hereby agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including but not limited to, service of a summons. The Parties agree that Settling Defendants need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XX.  **FINAL JUDGMENT**

45.  Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute the final judgment between the United States and Settling Defendants. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS <u>10TH</u> DAY OF <u>MAY</u>, 2010.

<u>JOHN F. WALTER /S/</u>

United States District Judge

JOHN F. WALTER

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of All Metal Processing Company, et al., Case No. CV-09-6363-JWF, relating to the 264 W. Spazier Superfund Site.

FOR THE UNITED STATES OF AMERICA

Ellen Mahan
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611

Matthew D. Thurlow
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611

22

Keith Takata
Superfund Division Director
U.S. Environmental Protection Agency, Region IX
75 Hawthorne Street
San Francisco, CA 94105

Larry Bradfish
Office of Regional Counsel
U.S. Environmental Protection Agency
75 Hawthorne Street
San Francisco, CA 94105

23

1

*Barbara C. Harker*
Barbara C. Harker
On behalf of the Estate of Helen L. Powers
3750 Santa Fe Road, Suite 109
Riverside, CA 92507

*Barbara C. Harker*
Barbara C. Harker
In her capacity as Executrix of the Estate of Helen L. Powers
3750 Santa Fe Road, Suite 109
Riverside, CA 92507

24